

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ABS/JN:MGD  *271 Cadman Plaza East*
F. #2019R01376  *Brooklyn, New York 11201*

October 21, 2020

By ECF

The Honorable Ann Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Anand Kalepu
      Criminal Docket No. 19-602 (AMD)

Dear Judge Donnelly:

   The government respectfully submits this letter in anticipation of sentencing, scheduled for October 28, 2020 at 2:30 p.m. via videoconference, and in response to the defendant's sentencing memorandum dated October 14, 2020 ("Def. Mem."). For the reasons set forth below, the government respectfully submits that a sentence of incarceration below the applicable United States Sentencing Guidelines (the "Guidelines") range of 37 to 46 months, as set forth in the March 13, 2020 Presentence Report (the "PSR"), is appropriate in this case

I.  The Offense Conduct and Procedural Background

   By way of background, Medicare is a federal health insurance program for individuals – referred to as "beneficiaries" – who are 65 years of age or older, or certain younger individuals with disabilities or certain specified illnesses. (PSR ¶¶ 4-5.) Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"). (PSR ¶ 5.) Medicare provides its beneficiaries with coverage for medically necessary physician services and outpatient care, including pharmaceuticals and durable medical equipment, orthotics and supplies ("DMEPOS"). (PSR ¶ 6.) Medicare also covers telemedicine services for beneficiaries under certain conditions, including (prior to March 2020) that the beneficiary reside in a rural area with limited access to specialist services, the telemedicine services be delivered by videoconference rather than audio and the beneficiary participate in the conference from a local physician's office. (PSR ¶ 14.) The defendant is enrolled as an individual practitioner with Medicare.

   This case arises from the defendant's work with a purported telemedicine company called AffordADoc. The defendant, a medical doctor licensed to practice in Ohio, was an independent contractor physician who was purportedly paid to consult with AffordADoc's

patients regarding prescriptions for DMEPOS, such as back and knee braces. (PSR ¶¶ 15-16.) The defendant was paid $30 per patient consult.

In reality, the payments to the defendant were kickbacks to induce him to sign DMEPOS orders regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and based solely on a brief telephone call generally lasting only a few minutes and made from the beneficiary's home. (See PSR ¶ 16.) The DMEPOS orders were then forwarded by AffordADoc and its co-conspirators to various DMEPOS companies, which in turn billed Medicare for the DMEPOS orders. Had Medicare known that the DMEPOS orders were procured as a result of kickbacks, the orders would not have been paid, as Medicare rules and regulations forbid payment of claims that were procured as a result of kickbacks. (See PSR ¶ 9.)

The defendant facilitated these fraudulent orders by signing medical records that set forth the results of physical examinations he had not conducted and that certified a finding of medical necessity he had not made. (PSR ¶ 17.) Again, had Medicare known that the DMEPOS orders were procured absent any determination of medical necessity, the orders would not have been paid, as Medicare rules and regulations forbade payment of claims that were not medically necessary. (See PSR ¶ 9.)

In April 2019, law enforcement arrested a number of individuals affiliated with AffordADoc. Several of the individuals arrested were physicians who had prescribed braces as AffordADoc independent contractors, like the defendant. Since then, a number of additional physicians who prescribed braces through AffordADoc have been arrested and charged in locations throughout the country.

In September 2019, the defendant was approached by law enforcement agents and admitted that he had prescribed braces to Medicare beneficiaries without conducting any examinations or determining whether the braces were medically necessary. After meeting with the government on two subsequent occasions, the defendant self-surrendered to law enforcement agents on December 23, 2019. The same day, he pleaded guilty before Magistrate Judge Peggy Kuo, pursuant to a plea agreement with the government, to a single-count information charging him with conspiring to defraud Medicare between December 2018 and April 2019, in violation of 18 U.S.C. § 1349. (See PSR ¶ 1.) He was released on bond and resides in Ohio. (See ECF No. 8.) A copy of the plea agreement was filed with Magistrate Judge Kuo as Court Exhibit 1.

II.  The Guidelines Calculation

The government agrees with the Guidelines calculation set forth in paragraphs 15 through 24 of the PSR.

| | |
|---|---|
| Base Offense Level (§ 2B1.1) | 6 |
| Plus: Loss More than $550,000 (§ 2B1.1(b)(1)(G)) | +14 |
| Plus: Federal health care offense with loss over $1,000,000 (§2B1.1(b)(1)(H)) | +2 |

      Plus: Abuse of Trust/Special Skill (§ 3B1.3)     +2

      Minus: Acceptance of Responsibility (§ 3E1.1(a) and (b))     <u>-3</u>

      Total:     <u>21</u>

Accordingly, based upon a total offense level of 21 and a criminal history category of I, the applicable Guidelines range is 37 to 46 months' imprisonment. (PSR ¶¶ 33, 36, 70.) The defendant stipulated to the Guidelines calculation set forth in the PSR in the parties' plea agreement. (Court Ex. 1 at ¶ 2.)

III. <u>A Custodial Sentence Below the Advisory Guidelines Range is Appropriate in this Case</u>

The government respectfully requests that the Court impose a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing. <u>See</u> 18 U.S.C. § 3553(a). The circumstances in this case, the history and characteristics of the defendant, the need to promote respect for the law and provide just punishment, and the need for specific and general deterrence justify a custodial sentence below the advisory Guidelines range ███████████████████████████████████████████████████████████████████████████████

    1. <u>The Nature and Circumstances of the Offense and Characteristics of the Defendant</u>

A custodial sentence below the advisory Guidelines' recommended sentence is appropriate considering the nature and circumstances of this offense. The defendant was not by any means the ringleader of the fraud, but his conduct is nonetheless serious: he abused his position as a Medicare-enrolled health care provider, abdicated his responsibility to the Medicare beneficiaries who trusted him with their care and by his participation enabled AffordADoc and its executives to continue defrauding the Medicare program in his name, all for the sake of personal financial gain.

The defendant is a highly experienced medical professional who worked steadily as a doctor for nearly four decades prior to his guilty plea. (PSR ¶¶ 58-65.) In the five years before the instant offense, he earned an average of over half a million dollars per year. (PSR ¶ 66.) Despite this lucrative practice, the defendant chose to use his abilities to perpetrate fraud and deceive Medicare for even greater financial gain. His longstanding experience with the program limits any possible justification or excuse for the defendant's involvement in this scheme. The defendant knew better than to engage in this admittedly illegal conduct and understood the damage that his actions could, and did, inflict on Medicare. In all, his conduct cost the Medicare program over $600,000, rendering those funds unavailable to provide care for those truly in need.

The defendant's conduct also constitutes a serious breach of the trust that the American public has placed in him as a Medicare-enrolled provider. The Medicare program is an entirely "trust-based system," meaning that "Medicare does not verify that procedures were actually performed by, for example, cross[-]referencing claims with medical records, but rather it relies on the representations of the medical professionals that each claim submitted was performed as billed." <u>United States v. Ahmed</u>, No. 14-CR-277 (DLI), 2017 WL 3149336, at *2

(E.D.N.Y. July 25, 2017). Medicare trusted the defendant to conduct himself in an honest and ethical manner, and he broke that trust by turning to fraud to line his pockets.

But the harm in this case went beyond the financial losses to Medicare. Elderly and vulnerable Medicare beneficiaries who called AffordADoc expected to receive medically necessary, personalized braces prescribed to them by a physician who had exercised his professional judgment based on their individual medical situation. Instead, the defendant prescribed braces whether or not they were medically necessary or even appropriate for the beneficiaries' particular medical condition. Nor were the beneficiaries given any instruction on how to use the braces, or offered follow-up examinations to ensure that the braces were being worn correctly and were not causing injury, which a physician providing genuine medical care would have ensured they had. The beneficiaries relied on the defendant to act in their best interests, but the only interest he acted in was his own.

2. Promoting Respect for the Law and Providing Just Punishment

The sentence imposed here must reflect the seriousness of the defendant's offense. The fraud in which the defendant participated targeted national programs relied on by millions of Americans, which has very real implications for individual lives. Congress aptly summarized the effects of health care fraud over thirty-five years ago:

> In whatever form it is found, . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. Rep. 95-393, pt. II, at 44 (1977); see also H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures."). These concerns are just as pressing today as they were then, which is why Congress has enacted increasingly severe penalties for health care fraud, most recently directing the Sentencing Commission to add enhancements for defendants who commit the most financially serious health care frauds. See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, §10606(a)(2)(C), 124 Stat. 119, 1007 (2010) (directing Sentencing Commission to amend guidelines in order to punish health care fraud more severely).

The defendant participated in and enabled a conspiracy to swindle Medicare into paying AffordADoc over $600,000 for services that he did not perform. He entered into the conspiracy knowingly and voluntarily while ignoring clear signs that AffordADoc was committing fraud, prescribed braces in a manner he knew to be inconsistent with his professional obligations and the Medicare beneficiaries' best interests and created false medical records in order to justify and cover up the fraud.

4

Moreover, while it is true, as the defendant points out in his memorandum, his involvement with AffordADoc lasted only five months and resulted in a fairly minimal financial gain, Def. Mem. at 2-4, the defendant did not voluntarily terminate his involvement with AffordADoc or withdraw from the conspiracy. Rather, he continued to participate in the fraud until law enforcement took action and AffordADoc, in effect, ceased to exist. Had the fraud not been exposed, there is no reason to believe that the defendant's conduct would have ended when it did or that his financial gain would have been so minimal.

To be sure, the defendant is not as culpable as the executives of AffordADoc and certain other co-conspirators. Nonetheless, he was a gatekeeper of the fraud: AffordADoc needed prescribing physicians in order to function, and would have collapsed without the willing involvement of the defendant and other physicians like him. A custodial sentence is required to reflect the seriousness of the defendant's conduct, to promote respect for the law and federally funded programs like Medicare and to adequately punish the defendant for the calculated steps he took to participate in the fraudulent scheme.

    3.   <u>Affording Deterrence and Protecting the Public</u>

The Court's sentence should also further the aims of specific and general deterrence. 18 U.S.C. § 3553(a)(2)(B), (C).

The defendant's conduct was not a single failure of judgment or momentary ethical lapse. Rather, the defendant's conduct involved repeated, deliberate decisions – choices he made over an extended period of time and that required lucidity and deliberation. As such, the government respectfully submits that the defendant's risk of recidivism is unclear, and a sentence that provides specific deterrence is warranted.

Additionally, and of perhaps more relevance in this case, the court should strongly consider the need for general deterrence. As Judge Garaufis recognized, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." <u>United States v. Johnson</u>, No. 16-CR-457-1 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018); <u>see also</u> <u>United States v. Martin</u>, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259) ("Congress viewed [general] deterrence as 'particularly important in the area of white collar crime.'"); <u>United States v. Mueffelman</u>, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). This is true, in part, because "[p]ersons who commit white-collar crimes like defendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed." <u>Johnson</u>, 2018 WL 1997975 at *5; <u>see also</u> <u>Martin</u>, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (internal quotation marks and citation omitted)); <u>Harmelin v. Michigan</u>, 501 U.S. 957, 988 (1991) ("Since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties").

The need to promote general deterrence is particularly acute in cases where, like the defendant, a government insurance program is the victim of the fraud. Fraud against

5

Medicare and other public insurance programs diverts scarce resources from the people those programs are designed to serve – the patients and beneficiaries – into the pockets of fraudsters.

In particular, as noted above, schemes such as the AffordADoc fraud cannot function without physicians, like the defendant, who are willing to sell their licenses for a few dollars per "consult." The deterrent effect of an incarceratory sentence in this case would therefore be particularly valuable, as it would drive home to medical practitioners the risk of participating in this type of scheme. Because licensed professionals are integral to the operation of such schemes, deterring them removes a critical and irreplaceable resource for would-be health care fraudsters.

IV. Restitution and Forfeiture

The government respectfully submits that the Court should order the defendant to pay restitution to the Medicare program in the amount of $692,021.88, which reflects the amount of claims paid by Medicare to the defendant in connection with the conspiracy, in accordance with the Mandatory Victim Restitution Act and the parties' plea agreement. See 18 U.S.C. § 3663A; (Court Ex. 1 at ¶ 1(e); PSR ¶¶ 80-81.) A proposed order of restitution is attached hereto as Exhibit A.

In the parties' plea agreement, the defendant agreed to pay forfeiture in the amount of $38,790.00, which reflects the defendant's proceeds from the conspiracy, as required by 18 U.S.C. § 982(a)(7). (Court Ex. 1 at ¶ 6; PSR ¶ 79.) The defendant paid his forfeiture obligation in full in anticipation of sentencing on or about October 7, 2020. Accordingly, the government respectfully submits that the Court should issue the proposed forfeiture order that will be filed by the government prior to sentencing, and requests that the Court incorporate that order into the judgment of conviction.

V.  Conclusion

        For all the reasons articulated above, the government respectfully requests that the Court sentence the defendant to a term of imprisonment below the advisory Guideline range of 37 to 46 months, and to pay restitution and criminal forfeiture in the amounts set forth above.

        Respectfully submitted,

        SETH D. DuCHARME
        Acting United States Attorney

        DANIEL KAHN
        Acting Chief
        Criminal Division, Fraud Section
        United States Department of Justice

By:   /s/ Miriam L. Glaser Dauermann
       Miriam L. Glaser Dauermann
       Trial Attorney
       United States Department of Justice
       Criminal Division, Fraud Section
       (718) 254-7575

cc:   Joseph Nascimento, Esq. (counsel to defendant) (by email and ECF)
      William Tunkey, Esq. (counsel to defendant) (by email and ECF)
      U.S.P.O. Jaime Turton (by email and ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – X

| | |
|---|---|
| UNITED STATES OF AMERICA | ORDER OF RESTITUTION |
| – against – | Criminal Docket No. 19-602 (AMD) |
| ANAND KALEPU, | |
| Defendant. | |

– – – – – – – – – – – – – – – – – – – X

WHEREAS, defendant ANAND KALEPU pleaded guilty on December 23, 2019, in the above-captioned case,

1. This order of restitution will be incorporated by reference to the Judgment and Commitment Order to be filed in connection with the above-captioned case.

2. The defendant is directed to pay restitution to the victim named and in the amount listed in Exhibit A to this order.

3. Restitution is due immediately, but payable at the rate of 10% of the defendant's gross monthly income, including income from all sources, in monthly payments. The total restitution amount to be paid is $692,021.88, plus interest. *See* 18 U.S.C. § 3612(f). Monthly payments shall be made to the Clerk of the Court, United States District Court, 225 Cadman Plaza East, Brooklyn, N.Y. 11201. The payment instrument shall reference the case name and number, as set forth above.

4. The Clerk is directed to distribute restitution payments *pro rata* to the victim at least once per year to the extent funds are available to distribute. The United States Department of Probation and the United States Attorney's Office are directed to provide to the Clerk whatever assistance is necessary to assure prompt distribution of restitution payments. The Clerk is directed to mail a copy of the instant document and the attachment to the

Trial Attorney assigned to the instant case and the Financial Litigation Unit of the United States Attorney's Office of the Eastern District of New York.

Dated:   Brooklyn, New York
           October ___, 2020

                                                  _____
                                                  HONORABLE ANN M. DONNELLY
                                                  UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA            Criminal Docket No. 19-602 (AMD)

    - against -

ANAND KALEPU,

               Defendant.

– – – – – – – – – – – – – – – – – – – X

## EXHIBIT A TO ORDER OF RESTITUTION

| VICTIM NAME AND ADDRESS | LOSS AMOUNT |
|---|---|
| Centers for Medicare and Medicaid Services Division of Accounting Operations P.O. Box 7520 Baltimore, MD 21207-0520 | $692,021.88 |
| Total Restitution | $692,021.88 (plus interest) |